UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| LONARDO RESENDEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. 14-cv-02969-NJV<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 23 |

## INTRODUCTION

Plaintiff, Lonardo Resendez, seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. AR. 127-28. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 7 & 8). The court therefore may decide the parties' motions for summary judgment. For the reasons stated below, the court will deny Plaintiff's motion for summary judgment, and will grant Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF RELEVANT MEDICAL EVIDENCE[1]

Plaintiff alleges disability due to the following impairments: right knee arthritis; degenerative disc disease of his lower back; and left shoulder impingement.

### *Knee Pain*

On March 3, 2010, Resendez was seen at St. Joseph Hospital ER for worsening knee pain and was diagnosed with probable torn meniscus. His treating physician Dr. Swenson took him off work, and an MRI on April 2, 2010, showed an oblique tear of the medial meniscus and grade 1 strain medial ligament. AR. 250.

On January 24, 2011, the VA medical staff reported that due to his medical condition Resendez was "not able to re-qualify for renewal of security officer and small arms permit" at that time. AR. 384.

---

[1] Plaintiff provided a summary of the medical evidence with his Motion. Defendant did not. Neither did Defendant challenge Plaintiff's summary of the facts. Accordingly, pursuant to Rule 56(e)(2), the court considers the facts presented by Plaintiff in his summary to be undisputed and adopts them here.

Arthroscopy, chondroplasty trochlea, MFC and meniscus debridement were performed on May 26, 2011. By November 21, 2011, surgeon Dr. La Roque found that although Resendez was doing well with his knee, he still had problems with uneven surfaces and prolonged walking. AR. 610.

Resendez testified at the hearing that while he felt he had "a twenty-five percent" improvement in his knee after the surgery of May 2011, he still felt sharp pain and had knee swelling every day.  AR. 45.  Plaintiff states that he uses a cane for both his knee and back pain. AR. 46.

*Low Back Pain*

On October 6, 2011, a lumbar spine MRI revealed degenerative disc and facet joint changes that had caused "quite pronounced bilateral nerve root canal narrowing at L5-S1 bilaterally, with more moderated narrowing at L4-L5."  At L5-S1, "the combination of disc bulge, spurring of the posteroinferolateral aspects of the L5 body and facet arthropathy have resulted in bilateral stenosis, moderately severe on both sides."  AR. 523.

Physical therapy for Plaintiff's back pain in 2011 was terminated due to his reaching a plateau in his progress and medical complications.  Plaintiff stated that he had "pain levels continuing at 5/10 to 10/10 range with difficulty sitting, coming to standing and getting around." AR. 635.

On April 24, 2012, Plaintiff was seen by Dr. Laretigue at the VA pain management clinic for ongoing low back pain with radiation to the right thigh, worsening over the prior two years. Plaintiff stated that his pain, which ranged from 7/10 to 9/10 over the previous months, was aggravated by standing, walking and bending.  Plaintiff reported that walking was limited to 15 minutes, standing to 15-20 minutes, and sitting to 18 minutes due to pain, and he was sleeping poorly.  His gait was antalgic.  AR 562-568.  Dr. Laretigue diagnosed facetogenic pain, myofascial

pain, and meralgia paresthetica. AR. 566. He noted that "patient completed the Oswestry Questionnaire 1 which assesses for physical disability, and Resendez scored 42, which suggests he has severe disability." AR. 567.

### *Obesity*

On September 23, 2010, Resendez weighed 269 pounds and was actively participating in nutritional classes, focusing on weight loss. AR 336, 389, 390, 454, 465, 557, 587. On March 15, 2011, he weighed 280 pounds, and by May 17, 2011, he weighed 256 pounds. AR. 372. On June 12, a registered dietician noted Resendez's 40-pound weight loss the previous year, but he had gained most of the weight back and wanted to start a new weight loss program. AR 557.

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that he has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability, *id*. § 416.920(a)(3), and must use a five-step sequential evaluation to determine whether the claimant is disabled. *Id*. § 416.920. "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *See* AR. 18-23.

At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. AR. 20.

4

At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered the following severe impairments: knee pain; morbid obesity; back pain; and right shoulder pain. AR. 20.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR. 20. Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with several physical and environmental limitations. AR. 21.

At Step Four, the ALJ determined that Plaintiff was capable of performing his past relevant work as a security guard and tow truck driver. AR. 23. Accordingly, without proceeding to Step 5, the ALJ found that Plaintiff had "not been under a disability, as defined in the Social Security Act, from March 4, 2010, through the date of th[e] decision." *Id*.

**ISSUESS PRESENTED**

Plaintiff presents five issues for this court's review of the ALJ's decision: (1) whether "[t]he ALJ's decision fails to present legitimate reasons for rejecting Plaintiff's testimony"; (2) whether "[t]he ALJ erred in determining that Plaintiff was able to return to his past relevant work as a tow truck driver"; (3) whether "[t]he ALJ's decision fails to present legitimate reasons for

giving little or no weight to the third party testimony of William Swatman"; (4) whether "the ALJ erred in considering Plaintiff's obesity as a factor contributing to his disability"; and (5) whether "substantial evidence did not support the ALJ's RFC Determination." Pl.'s Mot. (Doc. 21).

## DISCUSSION

### *1. The Credibility Determination*

Plaintiff contends that the case should be remanded because the ALJ failed to provide clear and convincing reasons supported by evidence in the record to reject Plaintiff's testimony as not credible. The ALJ found that Plaintiff had a medically determinable impairment that could reasonably be expected to cause pain, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC assessment. AR. 22-23.

Plaintiff argues that the ALJ made boilerplate statements and conclusory remarks regarding her rejection of Plaintiff's subjective complaints and that such conclusory statements are insufficient. The court does not agree. The ALJ discussed Plaintiff's activities of daily living, "the medical record showing routine treatment for back pain," and the "wide range of activities" Plaintiff can still perform. AR. 23. This is not boilerplate language. Rather, this language is specific to Plaintiff's claims as evidenced thought the RFC assessment.

Plaintiff's reliance on *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090 (9th Cir. 2014) is misplaced. In that case, the ALJ "made only the single general statement that 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment' . . . [and] stopped after this introductory remark." *Id.* at 1102-03. Here the ALJ first made the introductory statement, then explained its bases. "The inconsistencies between Plaintiff's allegations, on the one hand, and his daily activities, conservative treatment, and objective evidence of record, on the other, were proper and sufficiently specific bases for

6

discounting his claims of disabling symptoms, and the ALJ's reasoning was clear and convincing." *Honaker v. Colvin*, 2015 WL 262972, at *10 (C.D. Cal. Jan. 21, 2015).

### *a.     Daily Activities*

Plaintiff attacks the ALJ's reliance on Plaintiff's testimony regarding his daily activities in reaching the adverse credibility determination. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue,* 495 F.3d 625, 636 (9th Cir. 2007). With regard to daily activities, the relevant inquiry is whether "a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff points to his testimony that he only performs household chores three times a week, that he must stop while doing his chores every 15 minutes and "his testimony that he spends most of his day lying on a couch, watching TV for 4 hours and napping for 3 hours." Pl.'s Mot. (Doc. 21) at 12.

The court finds that substantial evidence supports the ALJ's reliance on Plaintiff's testimony of daily activities in making the credibility determination. While Plaintiff did say that he performed household chores three days a week (AR. 215), he also stated that he performed chores daily. AR. 185. And while Plaintiff stated that he must take breaks while performing the chores, with those breaks he is able to mow the lawn, "lift anything with a handle," shop, cook, do the laundry, clean dishes, mop, vacuum, sweep, as well as hunt and fish. AR. 52, 185-187, 201-202, 213-215, 217, 268. Plaintiff argues that his testimony evidences difficulty in engaging in these activities. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

Plaintiff also argues that the ALJ's "finding that plaintiff spends 'much of his day' driving his mother to and from work and on errands is also not supported by the record." Pl.'s Mot. (Doc. 21) at 12. Plaintiff states that "[w]hile Resendez testified that he drives his mother to and from work most days and takes her shopping once a week for 20-30 minutes, he never stated he spends 'much of his day' involved in this activity, nor is there any evidence from any other source which supports this contention. Again this finding is not consistent with Plaintiff's testimony that he spends 4 hours a day watching TV and napping for 3 hours a day." *Id*. Plaintiff misstates the ALJ's finding and points out Plaintiff's own inconsistencies. What the ALJ stated was that Plaintiff "spends much of his day driving his mother to and from work and on errands, and 'talking' to old friends on the computer 'at least' once per day." AR. 21. Indeed, Plaintiff stated that he takes care of his mother, driving her to and from work and on errands and that he helps his mother out, driving his car, "at least three times a day." (AR. 216). In addition, Plaintiff stated that he spends time talking to old friends "at least" once a day. Between taking care of his mother "at least" three times a day and talking to old friends on the computer "at least" once a day the court finds no error in the ALJ's conclusion that Plaintiff spends much of his day engaging in these activities. The ALJ's conclusions that Plaintiff's daily activities undermined his claims of disabling pain are reasonable and supported by substantial evidence. Moreover, Plaintiff's inconstant testimony regarding his daily activities further supports the ALJ's credibility determination. *See Orn*, 495 F.3d at 936.

Furthermore, the court finds that Plaintiff's argument that "the ALJ made no specific findings that plaintiff's reported activities of daily living were transferrable to a work setting, as required by *Orn*," Pl. Br. (Doc. 21) at 12, is without merit. The ALJ specifically found that Plaintiff's "written statements reflect that he engages in daily activities that equate to work at the light level." AR. 23. The ALJ goes on to say that even if Plaintiff's condition has worsened, that he can still engage in a wide range of activates that involve a substantial amount of sitting,

8

standing, walking, and lifting. *Id.* Thus, the ALJ properly made specific findings regarding Plaintiff's activities of daily living and their transferability to a work setting. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities.").

### b.   Routine Medical Treatment

Plaintiff argues that the ALJ erred in basing her credibility determination, in part, on the medical evidence that shows "routine" treatment for back pain. Plaintiff then points to the medical evidence of record related to his treatments and states that the evidence supports his contention of disabling pain.

The problem for Plaintiff is that he must show more than a medical condition that could reasonably be expected to produce disabling pain. The ALJ made that finding. Plaintiff must point to evidence of disabling pain. The ALJ relied on Plaintiff's statements that his pain medication reduced his pain from a 9/10 to a 5/10 with no side effects. While Plaintiff points the court to his prescription of a TENS unit, he fails to point to his report of relief following the TENS use and his declination of lumbar steroid injections. AR. 48, 54, 586, 600, 605, 621. "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). This is not to say that Plaintiff does not suffer pain, but rather that the ALJ's reliance on the medical record in making the credibility determination is supported by substantial evidence.

### c.   Obesity

Plaintiff argues that "[t]he record also does not support the ALJ's contention that plaintiff was non-compliant with respect to losing weight." Pl.'s Mot (Doc. 21) at 15. Social Security Ruling 02-01p instructs how the ALJ may consider a claimant's failure to follow prescribed weight loss. See SSR 02-01p. First, obesity, in combination with another impairment, must be the

9

cause of the claimant's disability. *Id*. Second, weight loss must be prescribed, not merely recommended. *Id*. Third, weight loss treatment must clearly be expected to improve the impairment to the extent the person would not be disabled. *Id*.

Plaintiff's contention is that while he was advised, he was not prescribed, weight treatment for weight loss. Under Social Security Ruling 02-1p, "[t]he treatment must be prescribed by a treating source . . . not simply recommended. A treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment." The commissioner concedes that the record does not support a finding that Plaintiff was prescribed weight loss treatment, but contests that any error that might have occurred was harmless because the ALJ stated other valid reasons for making the credibility determination.

When making the credibility determination, the ALJ noted that "[t]he claimant has been advised by multiple providers that weight loss would lessen his pain and improve his functioning. The claimant has also been advised that he needs to be more complaint with his home exercise program." AR. 23. Other than noting these two advisements, the ALJ does not go further. Previously in the decision, when evaluating Plaintiff's statement regarding a recently submitted statement of worsening pain, the ALJ stated: "The Claimant has received minimal treatment for knee pain since his surgery, and his chiropractor has stated that the claimant's back pain would improve if her were to significantly lose weight and be more complaint with his home exercise program." AR. 22. These are the two instances where the ALJ discusses Plaintiff's weight and non-compliance. In neither of these two instances does the ALJ state that Plaintiff was non-complaint with treatment for weight loss. Instead, in both instances, the ALJ notes: (1) the advisement to Plaintiff that weight loss would lessen his pain and improve functioning; and (2) the advisement to Plaintiff to be more compliant with his home exercise program. Plaintiff does not challenge either of these assertions and instead attempts to reframe the ALJ's statements as though she had considered Plaintiff's failure to follow prescribed treatment for weight loss in making the

credibility determination. This is not what the ALJ stated in her opinion. Indeed, the chiropractor's opinion in question recommended three factors, including weight loss, dietary changes, and regular home exercise compliance to improve Plaintiff's condition. The conditions in question are related to Plaintiff's back and knee, and exercise was recommended by both his chiropractor and Dr. Swenson of EPT Rehabilitation for those conditions. *See* AR. 264. Thus, the ALJ's notations regarding non-compliance directed at the home exercise advisement are separate from her notation regarding recommended weight loss and the court finds no error.

### 2.    Past Relevant Work

At Step 4 of the sequential process, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a security guard and tow truck driver "as actually and generally performed." AR. 23. With regard to the job of tow truck driver, Plaintiff contends that "[t]he record does not support that plaintiff can perform this job either as he actually performed or as it is generally performed." Pl.'s Mot. (Doc. 21) at 15-16. With regard to the job of security guard, Plaintiff argues that "evidence also does not support that [Plaintiff] could return to his past work as a security guard." *Id*. at 17.

#### a.    Tow Truck Driver

First, with regard to Plaintiff's past relevant work as a tow truck driver, the ALJ erred in finding that Plaintiff was capable of performing the job as generally performed. The VE testified that, according to the Dictionary of Occupational Titles ("DOT"), the position of tow truck driver as generally performed is medium work. AR. 58. This would exceed the RFC. However, this error was harmless as the VE also testified Plaintiff performed the job as light work, AR. 59, and that Plaintiff could perform his past work as a tow truck driver as actually performed. AR. 61. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ's step-four error was harmless in light of ALJ's alternative finding at step five that claimant could still perform other work in the national and local economies); *Reynolds v. Astrue*, 252 F. App'x 161, 165 (9th Cir.

11

2007) (ALJ's failure to make specific findings regarding the demands of claimant's past relevant work and claimant's ability to meet those demands was harmless error in light of ALJ's RFC assessment and step-five determination).

Although Plaintiff argues that the "as actually performed" finding was also error, the court finds this argument to be without merit. More specifically, Plaintiff points the court to the RFC which limits Plaintiff to only occasional stooping and argues that "Plaintiff, in fact, testified that in performing this job he frequently stooped up to 8 hours during his work day." Pl.'s Mot. (Doc. 21) at 16. This is not entirely accurate. Plaintiff indicated in his Work History Report that as a tow truck driver he stooped 1-8 hours a day. AR. 173. Considering the definition of stooping (bending down and forward at the waist), it was not possible for Plaintiff to stoop for 8 hours a day while also sitting for 1-3 hours a day, standing for 1-5 hours a day, crouching for 1-3 hours a day, kneeling for 1-3 hours a day, walking for 1-7 hours a day, etc . . . . All of which Plaintiff indicated on the same form. *Id.* Indeed, there were 10 categories for which Plaintiff indicated he spent an hour performing some function for at least an hour, thereby making stooping for up to 8 hours an impossibility. Accordingly, the ALJ properly relied up the expertise of a VE to evaluate Plaintiff's records and provide an opinion regarding Plaintiff's work as actually performed. Moreover, Plaintiff testified at the hearing that as actually performed, he spent half of his time standing/walking and half of his time sitting, depending on how far he had to drive. AR. 58. The ALJ's reliance on the VE to make the "as actually performed" determination is supported by substantial evidence and the court will not disturb it.

### b.   *Security Guard*

With regard to Plaintiff's past work as a security guard, Plaintiff:

> "contends that the evidence does not support an ability to be on his feet 'frequently,' up to 6 hours in an 8-hour work period. A limitation to less than frequent walking and/or standing would preclude plaintiff's ability to return to his past work as a security guard, and the ALJ's determination that he could return to this work is error."

12

Pl.'s Mot. (Doc. 21) at 17. Plaintiff bases this argument on the ALJ's giving of "'great weight to the claimant's own statements' in arriving at her RFC findings," but that Plaintiff's statements are that he "he can only stand or walk for 15 minutes before he must rest for 15 minutes [and that he] spends most of his day lying on the couch." *Id*. Here again Plaintiff has misstated the ALJ's decision. The entirety of the ALJ's statement reveals a different finding. The ALJ stated:

> "the undersigned has given great weight to the claimant's own statements indicating that he is able to perform housework on a daily basis, including laundry and dishes, for up to five hours per day; lift "anything with a handle," including grocery bags; mow the lawn with breaks; and walk up two flights of stairs albeit 'sideways.'"

AR. 21. Thus great weight was afforded to *some* of Plaintiff's statements. With regard to Plaintiff's statements regarding his more limited functioning, as discussed *infra*, the ALJ properly found those statements incredible. Accordingly, the court finds no error.

### 3. *Lay Witness Testimony*

Plaintiff points to the statement of Mr. Swatman, a lay witness, that he had observed a "vast decline" in Plaintiff's daily activities and functioning in the last few years. Plaintiff acknowledges that the ALJ mentions Mr. Swatman's statement, but argues that the "ALJ's failure to provide any comments, germane or otherwise, on Mr. Swatman's testimony is error." Pl.'s Mot. (Doc. 21) at 18. However, "the ALJ's failure to provide germane reasons is harmless error because [Mr. Swatman's] statements are substantially the same as Plaintiff's." *McCoy v. Colvin*, No. 13-CV-02332-JSC, 2014 WL 6679664, at *14 (N.D. Cal. Nov. 24, 2014). Moreover, "[b]ecause the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [Plaintiff's] testimony, [the court is] confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination. Accordingly, the ALJ's error was harmless." *Molina,* 674 F.3d at 1122.

### 4. *Plaintiff's Obesity*

Plaintiff argues that "[t]he ALJ erred by not acknowledging plaintiff's obesity and considering it in combination with his other identified ailments." Pl.'s Mot. (Doc. 21) at 19. The court finds this argument to be without merit. The ALJ certainly acknowledged Plaintiff's obesity, finding it a severe impairment. Later, in making the RFC determination, the ALJ noted that Plaintiff had been advised "by multiple providers that weight loss would lessen his pain and improve functioning." AR. 23.

Plaintiff points to SSR 02-1p and argues that the ruling "provides that, if obesity is found to be a medically determinable impairment, 'any functional limitations resulting from the obesity' must be considered in the RFC assessment." Pl.'s Mot. (Doc. 21) at 19. Plaintiff then asserts that no such assessment was made and thus the ALJ erred. Plaintiff misreads the RFC. It is clear from the RFC determination and the ALJ's discussion of Plaintiff's weight that the ALJ considered Plaintiff's obesity in making the RFC assessment. The ALJ's determination of Plaintiff's functional limitations was based on Plaintiff's reports of daily activities, discussed *infra*, which show that any limitations based in part on obesity would not preclude light work as modified by the RFC. Plaintiff fails to point the court to any evidence of record to indicate that his obesity would limit his ability to function at the RFC level. *See e.g. Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("Burch has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider."). Rather, Plaintiff speculates that his obesity would exacerbate his other impairments. While this may be true, Plaintiff's reports of his own daily activities support the ALJ's conclusion that even with Plaintiff's obesity he can perform work at the RFC level. *See Warren v. Colvin*, 2013 WL 6493103, at *12 (D. Or. Dec. 10, 2013) ("[P]laintiff does not identify what further restrictions flow from [the obesity impairment]; based on her activities of daily living, there is no indication that plaintiff would be unable to perform jobs consistent with her RFC.").

14

### 5.     *Substantial Evidence to Support the RFC Determination*

Finally, Plaintiff argues that the "ALJ erred in that she did not perform a "function-by-function" analysis in reaching her RFC findings" pursuant to SSR 96-8p.  Pl.'s Mot. (Doc. 21) at 22.  "The ALJ never quantified how long plaintiff could stand, sit, walk, and lift on a sustained 8-hour work-day basis."  *Id*.  "Plaintiff contends that his and third party statements of his daily activities do not 'equate to' or evidence, an ability to perform light work and thus, on an evidentiary basis, the ALJ erred in determining plaintiff's RFC."  *Id*. at 23.

The ALJ made the RFC determination that Plaintiff could perform light work as defined in 20 CFR 404.1567(b) with the exception of various limitations.  "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p.  "In making [her] RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on [Plaintiff's] subjective complaints.  Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).[2]  This is especially true where the ALJ determined that Plaintiff could return to his past relevant work *as actually performed*.  The court finds no error.

---

[2] As discussed *infra*, the ALJ properly found Plaintiff's statements regarding his more limited functioning incredible.

15

**CONCLUSION**

Accordingly, the court finds no reversible error and the Commissioner's request for summary judgment is GRANTED and Plaintiff's request for summary judgment is DENIED.

A separate judgment shall issue.

**IT IS SO ORDERED**.

Dated: September 11, 2015

_____
NANDOR J. VADAS
United States Magistrate Judge